IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

TODD SEALE,

    Plaintiff,

v.

QEP RESOURCES, INC., TIMOTHY J. CUTT,
PHILLIPS S. BAKER, JR., JULIE A. DILL,
JOSEPH N. JAGGERS, MICHAEL J. MINAROVIC,
MARY SHAFER-MALICKI, and BARTH E. WHITHAM,

    Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

Plaintiff Todd Seale ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against QEP Resources, Inc. ("QEP" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of QEP by Diamondback Energy, Inc. ("Diamondback") and Bohemia Merger Sub, Inc., a direct, wholly owned subsidiary of Diamondback.

1

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of QEP common stock.

7. Defendant QEP operates as a crude oil and natural gas exploration and production company in the United States. The Company is incorporated in Delaware and its principal executive offices are located in Denver, Colorado. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "QEP."

8. Defendant Timothy J. Cutt ("Cutt") is President, Chief Executive Officer, and a director of the Company.

9. Defendant Phillips S. Baker, Jr. ("Baker") is a director of the Company.

10. Defendant Julie A. Dill ("Dill") is a director of the Company.

11. Defendant Joseph N. Jaggers ("Jaggers") is a director of the Company.

12. Defendant Michael J. Minarovic ("Minarovic") is a director of the Company.

13. Defendant Mary Shafer-Malicki ("Shafer-Malicki") is Board Chair of the Company.

14. Defendant Barth E. Whitham ("Whitham") is a director of the Company.

15. Defendants Cutt, Baker, Dill, Jaggers, Minarovic, Shafer-Malicki, and Whitham are collectively referred to herein as the "Individual Defendants."

16. Defendants QEP and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

17. On December 21, 2020, QEP and Diamondback announced that they had entered into a definitive agreement under which Diamondback will acquire QEP in an all-stock transaction. Under the terms of the definitive merger agreement, stockholders of QEP will receive 0.05 shares of Diamondback common stock in exchange for each share of QEP common stock.

18. According to the press release announcing the merger, upon closing of the transaction and excluding the impact of shares to be issued in a previously announced acquisition of assets from Guidon Operating LLC, Diamondback stockholders will own approximately 92.8% of the combined company, and QEP stockholders will own approximately 7.2%. The press release announcing the merger states, in pertinent part:

**Diamondback Energy, Inc. to Acquire QEP Resources in All-Stock Transaction**

December 21, 2020 06:40 ET | **Source:** Diamondback Energy, Inc.

3

MIDLAND, Texas, Dec. 21, 2020 (GLOBE NEWSWIRE) -- Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and QEP Resources (NYSE: QEP) ("QEP") today announced that they have entered into a definitive agreement under which Diamondback will acquire QEP in an all-stock transaction valued at approximately $2.2 billion, including QEP's net debt of $1.6 billion as of September 30, 2020. The consideration will consist of 0.05 shares of Diamondback common stock for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. The transaction was unanimously approved by the Board of Directors of each company.

**QEP HIGHLIGHTS:**

- Approximately 49,000 net acres in the Midland Basin primarily held by production allowing for capital efficient development
- Q3 2020 average production of 48.3 MBO/d (76.7 MBOE/d); Q3 2020 average Permian production of 30.5 MBO/d (47.6 MBOE/d)
- 48 current drilled but uncompleted wells ("DUCs"); DUC balance expected to be worked down along with Diamondback's DUC balance in 2021, lowering 2021 reinvestment ratio
- QEP's Williston assets will be considered non-core and will be used to harvest cash flow or they will be divested, pending market conditions, with potential sale proceeds to be used towards debt reduction
- Significant adjacent Permian midstream infrastructure
- The pending QEP acquisition, together with the previously announced pending acquisition of assets from Guidon Operating LLC ("Guidon"), will bring Diamondback's total leasehold interests to over 276,000 net surface acres in the Midland Basin (429,000 Midland and Delaware Basin net acres)

"The acquisition of QEP also checks every box of Diamondback's corporate development strategy. The business combination with QEP and the Guidon transaction are accretive on all relevant 2021 financial metrics including free cash flow per share, cash flow per share and leverage, even before accounting for synergies. Most importantly, the addition of this Tier-1 resource competes for capital right away in Diamondback's current portfolio, and we will now be able to allocate most of our capital to the high-returning Midland Basin for the foreseeable future. Pro forma for these transactions, Diamondback is also expected to maintain its Investment Grade status, ensuring access to capital. As stated in past public commentary, Diamondback does not need to participate in industry consolidation to simply get bigger. We participate in corporate development opportunities that we firmly believe will increase the long-term value of our stockholders' investment," stated Travis Stice, Chief Executive Officer of Diamondback.

Mr. Stice continued, "Diamondback's expectations for capital allocation in 2021 remain unchanged: we are expecting to hold pro forma fourth quarter 2020 oil production flat through 2021 in the most capital efficient manner possible, which

has improved with today's announcements. Our differentiated cost structure, combined with the addition of this top quartile resource, will allow Diamondback to consistently generate free cash flow and grow our return of capital program to our stockholders."

Tim Cutt, President and Chief Executive Officer of QEP, stated, "We believe that this strategic merger with Diamondback, along with the addition of the Guidon assets, provides our shareholders with an exciting investment opportunity, now and in the future. The large contiguous Tier-1 acreage position in the Northern Midland Basin is expected to lead to operational synergies and deliver capital efficiencies beyond what each company could achieve independently. I believe in this combination and look forward to being a long-term shareholder and watching the value of the company grow with time."

Mr. Cutt continued, "I also want to take this opportunity to recognize QEP's employees and publicly thank them for their dedication and hard work in driving QEP's success. Their tireless efforts over the past several years led to a culture of peer leading operational excellence, safety and efficiency."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, stockholders of QEP will receive 0.05 shares of Diamondback common stock in exchange for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. Upon closing the transaction and excluding the impact of shares to be issued in the previously announced acquisition of assets from Guidon, Diamondback stockholders will own approximately 92.8% of the combined company, and QEP stockholders will own approximately 7.2%.

Diamondback remains committed to conservative financial management and is expected to maintain its Investment Grade credit ratings pro forma for the transaction.

The transaction has been unanimously approved by the Boards of Directors of Diamondback and QEP and is expected to be completed in the first quarter or early in the second quarter of 2021, subject to the approval of QEP stockholders, the satisfaction of certain regulatory approvals and other customary closing conditions. Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

**ADVISORS**
Goldman Sachs & Co. LLC is serving as lead financial advisor to Diamondback, with Moelis & Company also serving as financial advisor to Diamondback. Akin Gump Strauss Hauer & Feld LLP and Gibson, Dunn & Crutcher LLP are serving

as legal advisors to Diamondback. Evercore and Latham & Watkins LLP are serving as exclusive financial advisor and legal advisor to QEP, respectively.

\* \* \*

**About Diamondback Energy, Inc.**

Diamondback is an independent oil and natural gas company headquartered in Midland, Texas focused on the acquisition, development, exploration and exploitation of unconventional, onshore oil and natural gas reserves in the Permian Basin in West Texas. For more information, please visit **www.diamondbackenergy.com**.

**About QEP Resources**

QEP Resources, Inc. (NYSE: QEP) is an independent crude oil and natural gas exploration and production company focused in two regions of the United States: the Southern Region (primarily in Texas) and the Northern Region (primarily in North Dakota). For more information, visit QEP's website at: **www.qepres.com**.

19. On January 22, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

20. The Registration Statement, which recommends that QEP shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) QEP's and Diamondback's financial projections; (ii) the financial analyses performed by QEP's financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Evercore; and (iv) the sales process leading up to the Proposed Transaction.

21. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the QEP Board and Reasons for the Merger; (iii) Opinion of

QEP's Financial Advisor, and (iv) Certain QEP Unaudited Forecasted Financial Information.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, QEP shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning QEP's and Diamondback's Financial Projections**

23. The Registration Statement omits material information concerning QEP's and Diamondback's financial projections.

24. With respect to the "*QEP Unaudited Forecasted Financial Information*" and "*Forecasted Financial Information with respect to Diamondback*," the Registration Statement fails to disclose: (1) all line items underlying (i) Adjusted EBITDA, (ii) Free Cash Flow, and (iii) Net Debt/Adjusted EBITDA; (2) QEP's and Diamondback's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

25. When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures

as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

26. The disclosure of the aforementioned information is material because it would provide the Company's shareholders with a basis to project the future financial performances of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Evercore's Analyses

28. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Evercore.

29. The Registration Statement fails to disclose the following concerning Evercore's "*Net Asset Value Analysis for QEP on a Standalone Basis*": (1) all line items underlying the future cash flows of QEP; (2) the individual inputs and assumptions underlying the discount rates ranging

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jan. 29, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

from 8% to 35%; (3) the range of total reserve value under each of the QEP Management Plan Pricing and the NYMEX Strip Pricing scenarios; (4) the present value of the future estimated effects of QEP's hedging based on the hedge portfolio as of December 9, 2020; (5) the present value of the general and administrative expenses; (6) the present value of cash taxes; (7) QEP's estimated net debt as of December 31, 2020; and (8) the fully diluted outstanding shares of QEP common stock.

30. The Registration Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis for QEP on a Standalone Basis*": (1) the standalone, unlevered, after-tax free cash flows that QEP was expected to generate over the period from January 1, 2021 through December 31, 2024 including all underlying line items; (2) the ranges of terminal values for QEP; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 2.0% to 3.0%, (ii) terminal year enterprise value to last-twelve-month EBITDAX multiples ranging from 3.5x to 4.5x, and (iii) discount rates ranging from 11.0% to 13.0%; (4) QEP's net debt as of December 31, 2020; and (5) the fully diluted outstanding shares of QEP common stock.

31. With respect to Evercore's "*Analysts' Price Targets*" analyses of QEP and Diamondback, the Registration Statement fails to disclose: (1) the individual price targets observed by Evercore in its analyses; and (2) the sources thereof.

32. With respect to Evercore's "*Premia Paid Analysis*," the Registration Statement fails to disclose the individual premiums paid in the transactions selected by Evercore.

33. The Registration Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis for Diamondback on a Standalone Basis*": (1) the standalone, consolidated, unlevered, after-tax free cash flows Diamondback was expected to generate over the period from January 1, 2021 through December 31, 2024 including all underlying line items; (2)

9

the ranges of terminal values for Diamondback; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rate range of 2.0% to 3.0%, (ii) terminal year enterprise value to LTM EBITDAX multiples ranging from 5.5x to 7.5x, and (iii) discount rates ranging from 7.0% to 9.0%; (4) Diamondback's net debt as of December 31, 2020; (5) the market value of Diamondback's direct interest in Viper Energy Partners and Rattler Midstream; and (6) the fully diluted outstanding shares of Diamondback common stock

34. The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to QEP shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, QEP shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Evercore

35. The Registration Statement omits material information concerning potential conflicts of interest involving Evercore.

36. The Registration Statement fails to disclose the specific timing and nature of the "financial advisory or other services" Evercore provided to QEP, Diamondback, and their affiliates during the two-year period prior to the date of Evercore's fairness opinion, including the amount of compensation Evercore received for providing each service.

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and

implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

39. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Registration Statement provides that, during the sales process, QEP entered into confidentiality agreements with potential buyers.

41. The Registration Statement, however, fails to disclose the terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

42. Without this information, QEP shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable QEP shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 29, 2021        Respectfully submitted,

                **HALPER SADEH LLP**

                /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

                *Counsel for Plaintiff*